Debtor Mallinckrodt Pharmaceuticals Limited Case number (if known) ______
Name

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**District of Delaware**
(State)

Case number *(if known)*: ______ Chapter 11

☐Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

**1. Debtor's Name** — **Mallinckrodt Pharmaceuticals Limited**

**2. All other names debtor used in the last 8 years** — **Mallinckrodt Holdings Limited**

Include any assumed names, trade names, and *doing business as* names

**3. Debtor's federal Employer Identification Number** (EIN) — **98-1274182**

**4. Debtor's address**

**Principal place of business**

**3 Lotus Park**
Number Street

**The Causeway, Staines-Upon-Thames**

**Surrey, TW18 3AG United Kingdom**
City State Zip Code

County

**Mailing address, if different from principal place of business**

**675 McDonnell Blvd.**
Number Street

**Hazelwood Missouri 63042**
City State Zip Code

**Location of principal assets, if different from principal place of business**

Number Street

City State Zip Code

**5. Debtor's website** (URL) — www.mallinckrodt.com

**6. Type of debtor**

☒Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐Partnership (excluding LLP)

☐Other. Specify: ______

Debtor Mallinckrodt Pharmaceuticals Limited Case number *(if known)*
Name

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**3254 (Pharmaceutical and Medicine Manufacturing)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11**. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☒ A plan is being filed with this petition.
- ☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
- ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the ***Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11*** (Official Form 201A) with this form.
- ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☐ No
☒ Yes

District **District of Delaware** When **10/12/2020** (MM/DD/YYYY) Case number **20-12565**

District ______ When ______ (MM/DD/YYYY) Case number ______

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes

Debtor **See Attached Rider 1** Relationship **Affiliate**

District **District of Delaware** When: **Contemporaneously** (MM / DD / YYYY)

Case number, if known ______

Debtor Mallinckrodt Pharmaceuticals Limited Case number *(if known)*
Name

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? ______

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other ______

**Where is the property?**

Number Street

City State Zip Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency ______

Contact name ______

Phone ______

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors***

***Consolidated for all Debtors.**

| | | |
|---|---|---|
| ☐1-49 | ☐1,000-5,000 | ☐25,001-50,000 |
| ☐50-99 | ☐5,001-10,000 | ☐50,001-100,000 |
| ☐100-199 | ☒10,001-25,000 | ☐More than 100,000 |
| ☐200-999 | | |

**15. Estimated assets***

***Consolidated for all Debtors.** [1]

| | | |
|---|---|---|
| ☐$0-$50,000 | ☐$1,000,001-$10 million | ☐$500,000,001-$1 billion |
| ☐$50,001-$100,000 | ☐$10,000,001-$50 million | ☒$1,000,000,001-$10 billion |
| ☐$100,001-$500,000 | ☐$50,000,001-$100 million | ☐$10,000,000,001-$50 billion |
| ☐$500,001-$1 million | ☐$100,000,001-$500 million | ☐More than $50 billion |

**16. Estimated liabilities***

| | | |
|---|---|---|
| ☐$0-$50,000 | ☐$1,000,001-$10 million | ☐$500,000,001-$1 billion |
| ☐$50,001-$100,000 | ☐$10,000,001-$50 million | ☒$1,000,000,001-$10 billion |

[1] The estimated consolidated assets for all Debtors can be found on the most recent 10-Q filing for Mallinckrodt plc, which can be found at https://mallinckrodt.gcs-web.com/node/30136/html.

Debtor Mallinckrodt Pharmaceuticals Limited
Name

Case number *(if known)*

| | | | |
|---|---|---|---|
| ***Consolidated for all Debtors.** [2] | ☐$100,001-$500,000 | ☐$50,000,001-$100 million | ☐$10,000,000,001-$50 billion |
| | ☐$500,001-$1 million | ☐$100,000,001-$500 million | ☐More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.
- I have been authorized to file this petition on behalf of the debtor.
- I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **08/28/2023**
MM/ DD / YYYY

✘ ***/s/ Jason Goodson***
Signature of authorized representative of debtor

**Jason Goodson**
Printed name

Title **Authorized Signatory**

**18. Signature of attorney**

✘ /s/ ***Michael J. Merchant***
Signature of attorney for debtor

Date **08/28/2023**
MM/DD/YYYY

**Michael J. Merchant**

**Richards, Layton & Finger, P.A.**
Firm name

**920 North King Street**
Number Street

**Wilmington** **DE** **19801**
City State ZIP Code

**(302) 651-7700**
Contact phone

**merchant@rlf.com**
Email address

**DE No. 3854** **Delaware**
Bar number State

[2] The estimated consolidated liabilities for all Debtors can be found on the most recent 10-Q filing for Mallinckrodt plc, which can be found at https://mallinckrodt.gcs-web.com/node/30136/html.

**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case, collectively, the "***Debtors***") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware. Contemporaneously with the filing of their voluntary petitions, the Debtors are filing a motion with the Court requesting that their chapter 11 cases be consolidated for procedural purposes only and jointly administered.

| Entity Name | Federal Employee Identification Number (EIN) |
|---|---|
| Mallinckrodt plc | 98-1088325 |
| Acthar IP Unlimited Company | 98-1219747 |
| IMC Exploration Company | 74-1856768 |
| Infacare Pharmaceutical Corporation | 31-1807488 |
| INO Therapeutics LLC | 47-0931456 |
| Ludlow LLC | 04-2614539 |
| MAK LLC | 82-3297479 |
| Mallinckrodt APAP LLC | 47-2085115 |
| Mallinckrodt ARD Finance LLC | 82-3638933 |
| Mallinckrodt ARD Holdings Inc. | 47-2402827 |
| Mallinckrodt ARD Holdings Limited | 98-1190042 |
| Mallinckrodt ARD IP Unlimited Company | 98-1273238 |
| Mallinckrodt ARD LLC | 33-0476164 |
| Mallinckrodt Brand Pharmaceuticals LLC | 90-0136080 |
| Mallinckrodt Buckingham Unlimited Company | UK Tax ID 7891923224 |
| Mallinckrodt CB LLC | 83-1878651 |
| Mallinckrodt Critical Care Finance LLC | 47-5172425 |
| Mallinckrodt Enterprises Holdings, Inc. | 94-3160456 |
| Mallinckrodt Enterprises LLC | 36-4679061 |
| Mallinckrodt Enterprises UK Limited | 98-1190911 |
| Mallinckrodt Equinox Finance LLC | 32-0542730 |
| Mallinckrodt Hospital Products Inc. | 41-2142317 |
| Mallinckrodt Hospital Products IP Unlimited Company | 98-1273300 |
| Mallinckrodt International Finance S.A. | 98-1094609 |
| Mallinckrodt International Holdings S.à r.l. | 98-1272203 |
| Mallinckrodt IP Unlimited Company | 98-1190770 |
| Mallinckrodt LLC | 43-1479062 |
| Mallinckrodt Lux IP S.à r.l. | 98-1190722 |
| Mallinckrodt Manufacturing LLC | 47-5172075 |
| Mallinckrodt Pharma IP Trading Unlimited Company | 98-1272335 |

| Entity Name | Federal Employee Identification Number (EIN) |
|---|---|
| Mallinckrodt Pharmaceuticals Ireland Limited | 98-1217693 |
| Mallinckrodt Pharmaceuticals Limited | 98-1274182 |
| Mallinckrodt Quincy S.à r.l. | 98-1191395 |
| Mallinckrodt UK Finance LLP | 98-1274193 |
| Mallinckrodt UK Ltd | 98-1240542 |
| Mallinckrodt US Holdings LLC | 32-0408865 |
| Mallinckrodt US Pool LLC | 90-0937192 |
| Mallinckrodt Veterinary, Inc. | 36-3480465 |
| Mallinckrodt Windsor Ireland Finance Unlimited Company | Irish Tax ID 3347922OH |
| Mallinckrodt Windsor S.à r.l. | 98-1286736 |
| MCCH LLC | 32-0541022 |
| MEH, Inc. | 65-0952696 |
| MHP Finance LLC | 47-5176059 |
| MKG Medical UK Ltd | 98-1241288 |
| MNK 2011 LLC | 80-0739865 |
| MUSHI UK Holdings Limited | 98-1190248 |
| Ocera Therapeutics, Inc. | 63-1192270 |
| Petten Holdings Inc. | 83-3441641 |
| SpecGx Holdings LLC | 84-3594520 |
| SpecGx LLC | 81-4463153 |
| ST Operations LLC | 84-4597158 |
| ST Shared Services LLC | 84-3727053 |
| ST US Holdings LLC | 20-5950462 |
| ST US Pool LLC | 84-4591199 |
| Stratatech Corporation | 39-2025292 |
| Sucampo Holdings Inc. | 85-2745451 |
| Sucampo Pharma Americas LLC | 13-3929237 |
| Sucampo Pharmaceuticals LLC | 30-0520478 |
| Therakos, Inc. | 22-2575957 |
| Vtesse LLC | 47-1075596 |
| WebsterGx Holdco LLC | 85-0505835 |

# **Rider 1**

## **Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

**<u>Prior Bankruptcy Case Filed by Affiliate of the Debtor That Remains Pending</u>**

On October 12, 2020, the entity listed below filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The case is pending before the Honorable John T. Dorsey.

| Company | Case Number |
|---|---|
| Mallinckrodt plc | 20-12522 |

**WRITTEN BOARD RESOLUTIONS**

**OF**

**MALLINCKRODT PHARMACEUTICALS LIMITED**

(the **Company**)

## 1. BACKGROUND

1.1 The Company is a holding company within a group of companies, of which the ultimate parent is Mallinckrodt PLC (the **Parent**). The Parent and its subsidiaries (together, the **Mallinckrodt Group**) is a leading pharmaceutical business.

1.2 It is noted that the Mallinckrodt Group has material funded debt of c. USD3,600,000,000 and, while the Mallinckrodt Group currently has sufficient cash available to meet its liabilities as they fall due, the Mallinckrodt Group is over-leveraged and, given its financial performance and trading position, in the medium term will likely cease to be able to meet its liabilities as they fall due. In order to address the financial difficulties that are expected in the medium term, the Parent (on behalf of the Mallinckrodt Group), following discussions with the Mallinckrodt Group's principal stakeholders regarding various restructuring and other strategic options available to the Parent and the Mallinckrodt Group, entered into the Restructuring Support Agreement (as defined below) and began solicitation in respect of Restructuring (as defined below) in advance of its filing for a petition for relief under the provisions of chapter 11 of title 11 of the United States Code pursuant to which the Restructuring, including the DIP Facility (as defined below), shall be consummated (the **Chapter 11 Case**) on August 23, 2023, each as previously approved by the board of directors of the Company (the **Board**). The Parent (on behalf of the Mallinckrodt Group) now believes entry into the Chapter 11 Case is necessary (and in the best interests of the Mallinckrodt Group) to address the financial issues facing the Mallinckrodt Group (including the Company).

1.3 It is noted that the Company has provided various guarantees (the **Guarantees**) in relation to financial arrangements entered into by other members of the Mallinckrodt Group, including guarantees in respect of:

(a) the c.USD 1,700,000,000 credit agreement dated 16 June 2022 between Mallinckrodt PLC as Parent, Mallinckrodt International Finance S.A. as Lux Borrower, Mallinckrodt CB LLC as co-borrower, Acquiom Agency Services LLC and Seaport Loan Products LLC as co-administrative agents and Deutsche Bank AG New York Branch as collateral agent (the **Credit Agreement**);

(b) the 10.000% First Lien Senior Secured Notes due 2025 (the **2025 1L Notes**), the 11.500% First Lien Senior Secured Notes due 2028 (the **2028 1L Notes**), the 10.000% Second Lien Senior Secured Notes due 2025 (the **2025 2L Notes**) and the 10.000% Second Lien Senior Secured Notes due 2029 (the **2029 2L Notes**) each issued by Mallinckrodt International Finance S.A. and Mallinckrodt CB LLC (together, the **Notes**); and

(c) certain deferred settlement payments owed to the Opioid Master Disbursement Trust II (the **Opioid Trust**).

1.4 The Company has also provided security to the lenders and noteholders in respect of the Credit Agreement and the Notes.

1.5 It is further noted that, as the Company is a holding company within the Mallinckrodt Group and has provided Guarantees and security in respect of several of Mallinckrodt Group's financings, the Company's financial position and performance are dependent upon the continued viability and success of the Mallinckrodt Group and, as such, the Company is exposed to the risks of the Mallinckrodt Group as a whole. As a result, the Company's prospects and sustainability are tied to the Mallinckrodt Group's performance and outlook.

1.6 Each borrower (or other primary obligor) and guarantor in respect of the Mallinckrodt Group's financial arrangements (each an **Obligor**) is to determine whether it is in the best interest of such Obligor, including its creditors and other stakeholders, that such Obligor files a petition in respect of the Chapter 11 Case.

1.7 The Board has reviewed and analysed the materials presented by management of the Mallinckrodt Group and the external financial, legal and other advisers of the Mallinckrodt Group regarding (i) the financial condition, capital structure, liquidity position, business model and projections, short-term and long-term prospects of the Company and the Mallinckrodt Group, (ii) the Company's obligations as a guarantor under the Mallinckrodt Group's existing debt obligations, (iii) the restructuring and other strategic alternatives available to the Company and the Mallinckrodt Group, and (iv) the impact of the foregoing and the commencement of the Chapter 11 Case on the Company's business.

*The Restructuring Support Agreement and the Restructuring*

1.8 The Board has been presented with, among other things, the restructuring support agreement dated 23 August 2023 (the **Restructuring Support Agreement**) executed on behalf of the Company (among others), a draft of which (and the transactions contemplated therein) had previously been considered and approved by the Board.

1.9 Pursuant to the Restructuring Support Agreement, it is proposed that the Notes, Credit Agreement and Opioid Trust will be restructured by way of a plan of reorganisation proposed in connection with the Chapter 11 Case (the **Restructuring**). It is further noted that under the terms of the Restructuring Support Agreement, a prepetition process soliciting votes from creditors in respect of the Chapter 11 Case was launched on 23 August 2023 with the approval of the Board.

1.10 The Board has noted that, pursuant to the Restructuring Support Agreement, the Company is intended to be amongst the filing entities included in the Chapter 11 Case. It is further noted that (i) it is proposed that the existing debt obligations of the Company and the other obligors will be restructured in accordance with the Restructuring and it is the expectation of the Board that the implementation of the Restructuring will provide substantial benefits to the Company (along with the other debtors under the Chapter 11 Case listed in Schedule 3 to these resolutions (the **Debtors**)) and its creditors and other stakeholders. The Restructuring is expected to leave the Mallinckrodt Group's business intact and substantially de-levered, providing a material reduction in the Company's existing guarantee obligations. This de-leveraging will enhance the Company's long-term growth prospects and competitive position and allow the Company to emerge from the Chapter 11 Case as a reorganized and financially stable entity able to pay its debts as they fall due and, more generally, to be better positioned to withstand the pressures of the competitive pharmaceuticals industry; and (ii) it is the expectation of the Board that no insolvency proceedings will be initiated in relation to the Company in the UK (or in or under the laws of any other relevant jurisdiction).

1.11 The Board has further noted that the Mallinckrodt Group, with assistance from its legal and financial advisers, has engaged with its principal stakeholders in recent months, including its creditors, in order to identify and assess the options available to it to repay, refinance and/or restructure its existing debt obligations, of which the Company is a guarantor, through various alternatives without the need for filing the Chapter 11 Case, or to otherwise implement other transactions that would address its capital structure, and that the Board has determined that the filing of the Chapter 11 Case, whereby the

Company' existing debt obligations would be restructured and the Company's capital structure de-leveraged, is the best alternative.

1.12 The Board has further determined that it is desirable and in the best interests of the Company, its members, its creditors, and its other stakeholders that the Company file the Chapter 11 Case in order to restructure its existing debt obligations in conjunction with the other obligors, and to effectuate a substantial de-leveraging of the Company's capital structure. As a result, it is proposed that the Company approves the filing of the Chapter 11 Case.

*The DIP Facility*

1.13 As part of the Chapter 11 Case, it is noted that certain members of the Mallinckrodt Group intend to enter into, and the Company shall guarantee and provide security in respect of, a multi-draw $250,000,000 senior secured, super-priority debtor-in-possession term loan credit facility (such facility the **DIP Facility** and the credit agreement evidencing the DIP Facility being the **DIP Facility Agreement**), the proceeds of which will be used to provide liquidity for the Mallinckrodt Group during the Chapter 11 Case and such other uses as described in the DIP Facility Agreement. Absent the DIP Facility, the Mallinckrodt Group would likely have insufficient cash to complete the Chapter 11 Case.

1.14 It is noted that the Board has reviewed and evaluated the latest draft of the DIP Facility Agreement, which is substantially based on the term sheet entitled "$250m superpriority senior secured debtor-in-possession credit facility term sheet" (the **DIP Term Sheet**) which was appended to the Restructuring Support Agreement. It is noted that the DIP Facility Agreement is proposed to be, if agreed by the relevant parties thereto, entered into by and among the Company and other obligors, certain of their creditors, and certain other parties.

1.15 The Board has considered the interest of, and benefit to, the Company in providing guarantees and security in respect of the DIP Facility. It is noted that such guarantees and security will cover obligations in respect of the DIP Facility (the **DIP Obligations**), which include obligations of other companies in the wider Mallinckrodt Group which are Obligors. It is further noted that the DIP Obligations will also be guaranteed by such other Obligors and secured by security interests granted on the assets of each such Obligor. It is also noted that the Company already provides the Guarantees in respect of the Notes, Credit Agreement and Opioid Trust and security in respect of the Notes and the Credit Agreement. In respect of the new security, it is noted that the proposed security package to be given by the Company in respect of the lenders to the DIP Facility will be of wider scope than that currently provided by the Company in respect of the Notes and the Credit Agreement.

1.16 It is noted that the granting of guarantees and security by the Company in respect of the DIP Facility is required as a condition to the provision of the DIP Facility and that, without the DIP Facility, the Mallinckrodt Group may have insufficient cash to complete the Chapter 11 Case. The Board noted that the implementation of the Restructuring pursuant to the Chapter 11 Case is expected to provide benefits to the Company including by way of providing a material reduction in the Company's existing guarantee obligations.

1.17 The Board has noted that (i) the ultimate treatment of the DIP Facility upon the emergence of the Mallinckrodt Group from the Chapter 11 Case has been pre-agreed under the terms of the Restructuring Support Agreement and (ii) following the successful implementation of the Chapter 11 Case, the financial difficulties currently facing the Mallinckrodt Group are expected to be alleviated and the post-emergence group would be in a position to meet its liabilities as they fall due.

1.18 Taking into consideration the above, the Directors have formed the view that the Company and each of the other Obligors under the DIP Facility are likely to be able to meet its DIP Obligations when due.

*Adequate Protection Obligations*

1.19 The Board has further noted that, as the Company is to be amongst the filing entities included in the Chapter 11 Case, the Company may obtain benefits from the use of collateral, including cash collateral, as defined in section 363(a) of the Bankruptcy Code (the **Cash Collateral**), which is currently pledged as security for obligations owed to the Company's prepetition secured creditors (collectively the **Secured Creditors**). In order to use and obtain the benefits of the Cash Collateral, the Company may be required to provide certain adequate protection (as defined in the Bankruptcy Code) to the Secured Creditors (the **Adequate Protection Obligations**), as documented in the proposed interim order (the **Cash Collateral Orders**) and submitted to the United States Bankruptcy Court for the District of Delaware (the **Bankruptcy Court**).

*Further approvals*

1.20 It is further noted that, in connection with the Chapter 11 Case and the Restructuring, the Board would seek approval from the sole shareholder of the Company in relation to the Company's approval of and participation in the Chapter 11 Case and of the transactions contemplated by and pursuant to the Restructuring, pursuant to the proposed written ordinary resolutions appended to these resolutions as Schedule 2 (the **Resolutions of the Member**).

1.21 Furthermore, the Board noted that, in addition to the approvals of the Board and the member of the Company, the filing of the Chapter 11 Case by the Company is further subject to the approval from the board of Mallinckrodt PLC.

*Conflicts of interest and directors' duties*

1.22 Each of the directors has disclosed their respective interests in the matters which are subject of these resolutions, in accordance with the requirements of section 177 and/or section 182 of the Companies Act 2006 and/or the articles of association of the Company, by reason of their position as a director of other companies within the Mallinckrodt Group which are also involved in the Chapter 11 Case. It is noted that, under the Company's articles of association, the directors are entitled to vote in respect of such matters, notwithstanding their disclosed interests.

1.23 Each director hereby confirms that they have no conflict of interest in relation to the matters which are the subject of these resolutions which would constitute a conflict of interest in breach of section 175 of the Companies Act 2006 were it not authorised either by the directors or the members of the Company.

1.24 The Board has noted that, when considering and resolving on the matters subject of these resolutions, the Board is required to consider the particular circumstances of the Company and whether, in passing these resolutions, each director is acting in the best interests of and promoting the success of the Company for the benefit of its members as a whole and its other relevant stakeholders. The Board further noted in this context that when a company finds itself in financial difficulties (either when the company is insolvent, bordering on insolvency or that an insolvent liquidation or administration is probable), the primary duty of the directors to act in the best interests of the company shifts towards, and when an insolvent liquidation or administration is inevitable is ultimately displaced by, a duty to have regard to the interests of the general creditors such that the interests of such creditors would take precedence over the interests of the shareholders.

1.25 It is also noted that, in addition to their general duties as directors, they are required to consider whether, in all the relevant circumstances, there is a reasonable prospect of avoiding an insolvent administration or liquidation. The directors noted that if the Board were to conclude that there was no reasonable prospect of the Company avoiding an insolvent administration or liquidation, the directors would be required to take every step to minimise losses to creditors. In this regard, the Board noted the

execution of the Restructuring Support Agreement, the intention (set out therein) for the Debtors (including the Company) to commence the Chapter 11 Case on or around 28 August 2023 and the consequential de-levering of the Mallinckrodt Group's business and the reduction in the Company's guarantee obligations, both of which are expected to occur as a result of the implementation of the Restructuring.

## 2. DOCUMENTS

2.1 Copies of the following documents (the **Documents**) have been provided to the Board:

(a) the materials presented by management of the Mallinckrodt Group and the Mallinckrodt group's external financial, legal and other advisers regarding (i) the financial condition, capital structure, liquidity position, business model and projections, short-term and long-term prospects of the Company and Mallinckrodt Group, (ii) the Company's obligations as a guarantor under its existing debt obligations, (iii) the restructuring and other strategic alternatives available to the Company and Mallinckrodt Group, and (iv) the impact of the foregoing and the Company filing for the Chapter 11 Case on the Company's business;

(b) the latest draft of the DIP Facility Agreement and the form of the DIP Term Sheet which was appended to the Restructuring Support Agreement (such term sheet is scheduled to these resolutions as Schedule 1) and the latest drafts of the related security documents, including, without limitation, an English law debenture and the latest draft of the related debtor-in-possession subsidiary guarantee agreement; and

(c) the proposed Resolutions of the Member (scheduled to these resolutions as Schedule 2).

2.2 The Board has noted that each director must carefully consider the Documents and the Chapter 11 Case in the context of their duties, including in light of the guarantees and security proposed to be granted by the Company in respect of the DIP Facility, and whether the filing of the Chapter 11 Case by the Company (in particular taking into account the manner in which it would facilitate the proposed Restructuring) would be in the interests of its creditors generally, the members as a whole and its other relevant stakeholders.

## 3. RESOLUTIONS

Having carefully reviewed and considered the above mentioned proposals, the Chapter 11 Case (including the implications for the Company, the Company's commercial interests and the interests of its creditors and, to the extent applicable, its members and its other relevant stakeholders) and the Documents, we, the undersigned, being all the eligible directors of the Company entitled to vote on these resolutions and having regard to the requirements set out in paragraph 1.24 above relating to the exercise of our duties, given the financial condition of the Company, consider that the above mentioned proposals would promote the success of the Company for the benefit of its creditors (including its unsecured creditors), the members as a whole and its other relevant stakeholders (having regard to the relevant factors set out in section 172 of the Companies Act 2006), hereby pass the following resolutions:

THAT:

(a) it is desirable and in the best interests of the Company's creditors (including its unsecured creditors) that the Company commences the Chapter 11 Case by filing a petition with the Bankruptcy Court;

(b) it is desirable and in the best interests of the Company, its members as a whole, and its other relevant stakeholders that the Company files the Chapter 11 Case;

(c) each of the proposed Resolutions of the Member, the DIP Facility Agreement and any and all guarantees, security agreements, pledge agreements, reaffirmations, promissory notes, fee letters, escrow agreements, letters, notices, certificates, documents, and instruments authorised, executed, delivered, reaffirmed, verified, filed registered or recorded in connection with the DIP Facility (in each case with any such amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, joinders and extensions deemed necessary or convenient by any of the Authorised Officers (as defined below) collectively, the "**DIP Financing Documents**")) be and is hereby approved;

(d) it is desirable and in the best interests of the Company's creditors (including its unsecured creditors), its members as a whole and, its other relevant stakeholders that the DIP Facility Agreement and the other DIP Financing Documents, is executed by the Company. In this regard, it is noted the giving of guarantees and grant of security in respect of the DIP Facility is required as a condition of the DIP Facility being provided;

(e) the Resolutions of the Member be proposed for approval by the sole member of the Company and that such resolutions be despatched immediately to the sole member and to the auditors of the Company, to seek from the sole member its agreement to the Resolutions of the Member;

(f) subject to and immediately following the passing of the Resolutions of the Member and the approval from the board of Mallinckrodt PLC in respect of the Chapter 11 Case and the DIP Facility, the filing of the Chapter 11 Case and the entry into the DIP Facility by the Company be and is hereby approved, and:

(i) each director and officer of the Company (collectively, the **Authorised Officers**) be, and each of them acting alone hereby is, authorised to execute and verify such petition of the Company in the name of such Company under chapter 11 of the Bankruptcy Code and to cause the same to be filed with the Bankruptcy Court , in such form and at such time as the Authorised Officer executing such petition shall determine;

(ii) each of the Authorised Officers be, and each of them hereby is, authorised to execute and file, or cause to be filed (or direct others to do so on their behalf as provided herein) with the Bankruptcy Court, on behalf of the Company, all petitions, affidavits, schedules, motions, lists, applications, pleadings, and other necessary papers or documents, including any amendments thereto, and, in connection therewith, to employ and retain all assistance by legal counsel, financial advisers, accountants, or other professionals and to take any and all actions that they deem necessary or proper to obtain such chapter 11 bankruptcy relief, and to take any necessary steps to coordinate and effectuate the Chapter 11 Case;

(iii) subject to the DIP Facility Agreement being finalised and agreed by all parties in a form which is satisfactory to the Company, the Board hereby authorises and approves the Company to execute and deliver the DIP Facility Agreement and all associated guarantee and security documentation, in each case with any such amendments deemed necessary or convenient by any of the Authorised Officers of the Company;

(iv) each other agreement, document, and instrument contemplated by the Restructuring Support Agreement and the DIP Facility Agreement and any other DIP Financing Documents to be executed or delivered by the Company is hereby authorised and approved;

(v) each of the Authorised Officers (or, in the case of a deed, any Authorised Officer in the presence of a witness who attests the signature or any two Authorised Officers or any Authorised Officer and the company secretary) be, and each of them hereby is,

authorised, empowered, and directed, in the name and on behalf of the Company, to document, execute, and deliver the DIP Facility Agreement any other DIP Financing Documents and the security and guarantee documentation in relation to the DIP Facility, in each case as the same may be amended, supplemented, or modified, as such Authorised Officer may consider necessary, proper, or desirable, and in the best interests of the Company, its members as a whole, its creditors and relevant other stakeholders, as applicable, consistent with the intent of these resolutions, the execution thereof by such Authorised Officer to be conclusive evidence of such determination, and to negotiate, document, execute, and deliver such other documents and to take any and all such further action which such Authorised Officer determines to be necessary or appropriate in order to effectuate the general intent of the foregoing resolutions;

(vi) each of the Authorised Officers (or, in the case of a deed, any Authorised Officer in the presence of a witness who attests the signature or any two Authorised Officers or any Authorised Officer and the company secretary) be, and each of them hereby is, authorised, directed, and empowered, with full power of delegation, on behalf of and in the name of the Company of which they are Authorised Officers, to execute, verify, and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement, or otherwise modify from time to time, all necessary or appropriate documents, including, without limitation, petitions, affidavits, schedules, motions, lists, applications, pleadings, and other documents, agreements, and papers, including the DIP Financing Documents and any and all other loan agreements, documents, notes, guaranties, security agreements, pledge agreements, and all other documents, agreements, or instruments as may be deemed necessary or appropriate by such Authorised Officer, and to take any and all actions, including the grant of new liens and payment of adequate protection amounts, that such Authorised Officer deems necessary or appropriate, each in connection with the Chapter 11 Case, any usage of cash collateral and other collateral under the Company's secured credit facilities contemplated hereby or thereby;

(vii) each of the Authorised Officers be, and each of them hereby is, authorised, directed, and empowered to provide any adequate protection to the Secured Creditors contemplated hereby or thereby, submitted for approval to the Bankruptcy Court and as documented in Cash Collateral Orders or such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents to which the Company is or will be a party, including, but not limited to, any security and pledge agreement or guaranty agreement, and to undertake any and all related actions and transactions and pay or approve the payment of all fees and expenses payable in connection with the protection of such secured lenders as determined to be necessary, desirable, or appropriate by the Authorised Officers;

(viii) any Authorised Officer or the company secretary, in each case acting alone, is hereby authorised to issue and certify as a true, complete and up-to-date copy of the Memorandum and Articles of Association of the Company, or any committee thereof, and to certify from time to time that no changes have taken place in respect thereof;

(ix) the company secretary, any Authorised Officer or any person otherwise authorised by the Company be instructed to complete all necessary and appropriate entries in the books and registers of the Company and to arrange for the relevant forms to be filed with the Registrar of Companies; and

(x) all acts and things carried out by any Authorised Officer or by any employee or agent of the Company in connection with the DIP Facility, the Restructuring Support

Agreement or any other transaction contemplated by these resolutions are ratified, approved and confirmed in all respects.

***Retention of Professionals***

(xi) each of the Authorised Officers be, and each of them hereby is, authorised and directed, on behalf of and in the name of the Company, to employ the law firm of Latham & Watkins LLP to represent and advise the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any pleadings, in connection with the Chapter 11 Case, and each of the Authorised Officers is hereby authorised and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Latham & Watkins LLP;

(xii) that each of the Authorised Officers be, and each of them hereby is, authorised and directed, on behalf of and in the name of the Company, to employ the law firm of Richards, Layton & Finger, PA to represent and advise the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Case, and each of the Authorised Officers is hereby authorised and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Richards, Layton & Finger, PA;

(xiii) each of the Authorised Officers be, and each of them hereby is, authorised and directed, on behalf of and in the name of the Company of which they are Authorised Officers, to employ the law firm of Wachtell, Lipton, Rosen & Katz to represent and advise the Company on corporate and finance matters, and to take any and all actions to advance the Company's rights and obligations in connection with corporate and finance matters, and each of the Authorised Officers is hereby authorised and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Wachtell, Lipton, Rosen & Katz;

(xiv) each of the Authorised Officers be, and each of them hereby is, authorised and directed, on behalf of and in the name of the Company of which they are Authorised Officers, to employ the firm of Guggenheim Securities, LLC, as investment banker and financial adviser, to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance of the Company's rights and obligations in connection with the Chapter 11 Case, and each of the Authorised Officers is hereby authorised and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Guggenheim Securities, LLC;

(xv) each of the Authorised Officers be, and each of them hereby is, authorised and directed, on behalf of and in the name of the Company, to employ the firm of AlixPartners, LLP, as restructuring adviser, to represent and assist the Company in

carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Case, and each of the Authorised Officers are hereby authorised and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of AlixPartners, LLP;

(xvi) each of the Authorised Officers be, and each of them hereby is, authorised and directed, on behalf of and in the name of the Company of which they are Authorised Officers, to employ the firm of Kroll Restructuring Administration LLC, as claims, noticing, soliciting, and balloting agent, to assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance of the Company's rights and obligations in connection with the Chapter 11 Case, and each of the Authorised Officers is hereby authorised and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Cases, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Kroll Restructuring Administration LLC; and

(xvii) each of the Authorised Officers be, and each of them hereby is, authorised and directed, on behalf of and in the name of the Company of which they are Authorised Officers, to employ any other professionals necessary to assist the Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorised Officers is hereby authorised and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Case and cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of any other professionals, as necessary.

**MALLINCKRODT PHARMACEUTICALS LIMITED**

DocuSigned by:
Jason Goodson
D7A6E507EDD947C...

Jason Goodson

DocuSigned by:
Matthew T Peters
C5579AF4FFEA4FD...

Matthew Peters

DocuSigned by:
Daniel Speciale
19C4999874294AF...

Daniel Speciale

Date: 28 August 2023

**SCHEDULE 1**

**DRAFT DIP TERM SHEET**

**Intentionally Omitted From Filed Petition**

# SCHEDULE 2

# RESOLUTIONS OF THE MEMBER

**Intentionally Omitted From Filed Petition**

**SCHEDULE 3**

**DEBTORS**

| |
|---|
| Mallinckrodt plc |
| Mallinckrodt Equinox Finance LLC |
| Mallinckrodt Hospital Products Inc. |
| Mallinckrodt Hospital Products IP Unlimited Company |
| Mallinckrodt International Finance S.A. |
| Mallinckrodt International Holdings S.à r.l. |
| Mallinckrodt IP Unlimited Company |
| Mallinckrodt LLC |
| Mallinckrodt Lux IP S.à r.l. |
| Mallinckrodt Manufacturing LLC |
| Mallinckrodt Pharma IP Trading Unlimited Company |
| Mallinckrodt Pharmaceuticals Ireland Limited |
| Mallinckrodt Pharmaceuticals Limited |
| Mallinckrodt Quincy S.à r.l. |
| Mallinckrodt UK Finance LLP |
| Mallinckrodt UK Ltd |
| Mallinckrodt US Holdings LLC |
| Mallinckrodt US Pool LLC |
| Mallinckrodt Veterinary, Inc. |
| Mallinckrodt Windsor Ireland Finance Unlimited Company |
| Mallinckrodt Windsor S.à r.l. |
| MCCH LLC |
| MEH, Inc. |

| |
|---|
| MHP Finance LLC |
| MKG Medical UK Ltd |
| MNK 2011 LLC |
| MUSHI UK Holdings Limited |
| Ocera Therapeutics, Inc. |
| Petten Holdings Inc. |
| SpecGx Holdings LLC |
| SpecGx LLC |
| ST Operations LLC |
| ST Shared Services LLC |
| ST US Holdings LLC |
| ST US Pool LLC |
| Stratatech Corporation |
| Sucampo Holdings Inc. |
| Sucampo Pharma Americas LLC |
| Sucampo Pharmaceuticals LLC |
| Therakos, Inc. |
| Vtesse LLC |
| WebsterGx Holdco LLC |
| Acthar IP Unlimited Co. |
| IMC Exploration Company |
| Infacare Pharmaceutical Corporation |
| INO Therapeutics LLC |
| Ludlow LLC |
| MAK LLC |

| |
|---|
| Mallinckrodt APAP LLC |
| Mallinckrodt ARD Finance LLC |
| Mallinckrodt ARD Holdings Inc. |
| Mallinckrodt ARD Holdings Limited |
| Mallinckrodt ARD IP Unlimited Company |
| Mallinckrodt ARD LLC |
| Mallinckrodt Brand Pharmaceuticals LLC |
| Mallinckrodt Buckingham Unlimited Company |
| Mallinckrodt CB LLC |
| Mallinckrodt Critical Care Finance LLC |
| Mallinckrodt Enterprises Holdings, Inc. |
| Mallinckrodt Enterprises LLC |
| Mallinckrodt Enterprises UK Limited |

Company No. 09780382

THE COMPANIES ACT 2006

COMPANY LIMITED BY SHARES

WRITTEN ORDINARY RESOLUTION

OF

MALLINCKRODT PHARMACEUTICALS LIMITED
(the **Company**)

For the purpose of the ordinary resolutions below, capitalised terms used but not otherwise defined shall have the meaning given to them in the written resolutions of the board of directors of the Company set out at the annex below.

In accordance with Chapter 2 of Part 13 of the Companies Act 2006, the directors of the Company proposed that the following resolutions be passed as ordinary resolutions:

## ORDINARY RESOLUTIONS

THAT:

subject to the approval from the board of Mallinckrodt plc in connection with the filing of a petition for relief under the applicable provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the **Chapter 11 Case**), the filing, by the Company, of the Chapter 11 Case be approved and that the directors of the Company be authorised to take any action and approve and authorise the execution of any document which the directors in their absolute discretion deem necessary or desirable to effect the Chapter 11 Case or any matter in connection with the Chapter 11 Case and the transactions contemplated thereby (including the Restructuring and the DIP Facility);

the entry into the DIP Facility by the Company and the DIP Financing Documents (in each case with any such amendments deemed necessary or convenient by any of the directors) be approved and that the directors of the Company be authorised to take any action and approve and authorise the execution and delivery of any document which the directors in their absolute discretion deem necessary or convenient in connection with the DIP Facility and the DIP Financing Documents or to effect any matter in connection with the DIP Facility and the DIP Financing Documents; and

all actions and approvals by the board of the Company as referred to in paragraph 3 of the written board resolution, which is set out at the annex below, be and are hereby approved.

Company No. 09780382

**AGREEMENT OF ELIGIBLE MEMBER**

The undersigned, being the sole eligible member on 28 August 2023 (the circulation date), confirms that it has received a copy of the above written draft resolutions in accordance with Section 291 of the Companies Act 2006 and irrevocably agrees that the resolutions set out above are passed as written resolutions pursuant to Section 288 of the Companies Act 2006 and that such resolutions shall take effect as ordinary resolutions:

Signed by

DocuSigned by:
Daniel Speciale
………………………………………………
19C4999874294A5...

By: Daniel Speciale
Title: Manager

for and on behalf of **MALLINCKRODT UK LIMITED** (sole member)

Date: 28 August 2023

*The sole eligible member must signify its agreement to the proposed resolution by delivering an electronic copy of the signed resolution to the Company, and delivering a copy to the Company at 3 Lotus Park, The Causeway, Staines upon Thames, TW18 3AG within 28 days from and including the circulation date. The proposed resolution will lapse if it is not passed by the end of that 28 day period.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MALLINCKRODT PHARMACEUTICALS LIMITED, | ) | Case No. 23-_______ (___) |
| | ) | Tax ID: 98-1274182 |
| Debtor. | ) | |

**CORPORATE OWNERSHIP STATEMENT**

The following is the list of entities that directly or indirectly own 10% or more of any class of the above-captioned debtor's equity interests. This list has been prepared in accordance with Fed. R. Bankr. P. 1007(a)(1) and Fed. R. Bankr. P. 7007.1 for filing in this chapter 11 case.

| Shareholder | Approximate Percentage of Units Held |
|---|---|
| Mallinckrodt UK Ltd | 100% |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MALLINCKRODT PHARMACEUTICALS LIMITED, | ) | Case No. 23-_______ (___) |
| | ) | Tax ID: 98-1274182 |
| Debtor. | ) | |

**LIST OF EQUITY SECURITY HOLDERS**

The following is a list of the above-captioned debtor's equity security holders. This list has been prepared in accordance with Fed. R. Bankr. P. 1007(a)(3) for filing in this chapter 11 case.

| Equity Holder | Address | Ownership |
|---|---|---|
| Mallinckrodt UK Ltd | 3 Lotus Park<br>The Causeway, Staines-Upon-Thames<br>Surrey, TW18 3AG United Kingdom | 100% |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | ) | Case No. 23- _________ (__) |
| Debtors.[1] | ) | (Joint Administration Requested) |

**CONSOLIDATED LIST OF CREDITORS**
**HOLDING 50 LARGEST UNSECURED CLAIMS**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C §§ 101-1532 (the "***Bankruptcy Code***"). Pursuant to Federal Rule of Bankruptcy Procedure 1007(d), the following is a consolidated list of the Debtors' creditors holding the fifty (50) largest unsecured claims (the "***Creditor List***") based on the Debtors' unaudited books and records as of August 21, 2023.

The Creditor List does not include (i) persons that come within the definition of "insider" set forth in 11 U.S.C. § 101(31) or (ii) secured creditors, unless the value of such creditors' collateral is such that the unsecured deficiency places the creditor among the holders of the 50 largest unsecured claims.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. Moreover, nothing herein shall affect the Debtors' rights to challenge the amount or characterization of any claim at a later date. The failure to list a claim as contingent, unliquidated, or disputed does not constitute a waiver of the Debtors' rights to contest the validity, priority, and/or amount of any such claim at a later date.

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/mallinckrodt2023. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

| Fill in this information to identify the case: |
|---|
| Debtor name: Mallinckrodt plc, et al. |
| United States Bankruptcy Court for the: District of Delaware |
| Case number (If known): ______________ |

☐ Check if this is an amended filing

Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders 12/15

**A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.**

| | Name of creditor | Complete mailing address, and employee, agents, or department familiar with claim | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS)<br><br>ATTORNEY OF RECORD:<br>U.S. DEPARTMENT OF JUSTICE<br>CIVIL DIVISION, FEDERAL PROGRAMS BRANCH | 7500 SECURITY BOULEVARD<br>BALTIMORE, MD 21244<br><br>1100 L STREET, NW<br>WASHINGTON, DC 20005 | KEVIN MATTHEW SNELL<br>PH: (202) 305-0924<br>KEVIN.SNELL@USDOJ.GOV | CMS/DOJ/STATE SETTLEMENT AGREEMENT | CONTINGENT | | | $230,000,000.00 |
| 2 | COTTER CORPORATION | C/O JENNER & BLOCK LLP<br>353 N. CLARK ST<br>CHICAGO, IL 60654 | CATHERINE STEEGE<br>PH: (312) 222-9350<br>CSTEEGE@JENNER.COM | ENVIRONMENTAL CLAIM | CONTINGENT<br>UNLIQUIDATED<br>DISPUTED | | | UNLIQUIDATED |
| 3 | MALLINCKRODT GENERAL UNSECURED CLAIMS TRUST | HEATHER BARLOW, SOLELY IN HER CAPACITY AS GENERAL UNSECURED CLAIMS TRUSTEE<br>C/O ROBINSON & COLE LLP<br>1201 N. MARKET ST, SUITE 1406<br>WILMINGTON, DE 19801 | JAMIE EDMONSON<br>PH: (302) 516-1700<br>JEDMONSON@RC.COM | CONTRACT CLAIM | CONTINGENT | | | $20,000,000.00(1) |
| 4 | CALIFORNIA DEPARTMENT OF HEALTH SERVICES | DHCS / PHARMACY BENEFIT DIVISION<br>1501 CAPITOL AVENUE, MS 4604<br>SACRAMENTO, CA 95814 | LINH LE<br>PH: 916-345-8563<br>LINH.LE1@DHCS.CA.GOV | MEDICAID REBATE ACCRUALS | | | | $14,454,817.00 |
| 5 | AMERISOURCEBERGEN CORPORATION | PO BOX 247<br>THOROFARE, NJ 08086 | JENN DOYLE<br>PH: (856) 384-2120 | THIRD-PARTY REBATE ACCRUALS | | | | $7,753,088.00 |
| 6 | WALGREENS BOOTS ALLIANCE | 108 WILMOT ROAD<br>DEERFIELD, IL 60015 | RENE GIMENEZ<br>PH: N/A<br>GENERICS.RECONCILIATION@WBADEV.COM | THIRD-PARTY REBATE ACCRUALS | | | | $7,084,886.00 |
| 7 | CVS CAREMARK | 1950 NORTH STEMMONS FREEWAY, SUITE 5010<br>DALLAS, TX 75207 | NEAL ALLEN BAKER<br>PH: (480) 361-4600 | THIRD-PARTY REBATE ACCRUALS | | | | $6,963,363.00 |
| 8 | FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION | 2727 MAHAN DRIVE<br>TALLAHASSEE, FL 32308 | ANA ARISTIZABAL<br>PH: 850-412-4080<br>ANA.ARISTIZABAL@AHCA.MYFLORIDA.COM | MEDICAID REBATE ACCRUALS | | | | $6,872,362.00 |
| 9 | ZINC HEALTH SERVICES | 1950 NORTH STEMMONS FREEWAY, SUITE 5010<br>DALLAS, TX 75207 | NEAL ALLEN BAKER<br>PH: (480) 361-4600 | THIRD-PARTY REBATE ACCRUALS | | | | $5,923,914.00 |
| 10 | ASCENT HEALTH SERVICES | SCHAFFHAUSEN LIPO PARK,<br>INDUSTRIESTRASSE 2<br>SCHAFFHAUSEN 08207<br>SWITZERLAND | JOHN ROBERT<br>PH: N/A<br>JOHN.ROBERT@EXPRESS-SCRIPTS.COM | THIRD-PARTY REBATE ACCRUALS | | | | $5,814,629.00 |
| 11 | NEW YORK STATE DEPARTMENT OF HEALTH | 15 CORNELL ROAD, SUITE 2201<br>LATHAM, NY 12110 | COURTNEY SUTTLES<br>PH: 518-220-3811<br>SUTTLESC@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $4,588,662.00 |
| 12 | CARDINAL HEALTH | PO BOX 641231<br>PITTSBURGH, PA 15264 | GRACE HIPOL<br>PH: N/A<br>GRACE.HIPOL@CARDINALHEALTH.COM | THIRD-PARTY REBATE ACCRUALS | | | | $3,821,833.00 |
| 13 | BONDALTI CHEMICALS S.A. | RUA DO AMONIACO PORTUGUES #10<br>QUNINTA DA INDUSTRIA<br>ESTARREJA 3860-680<br>PORTUGAL | NUNO PACHECO<br>PH: (351) 481-0300<br>NUNO.PACHECO@CUF-QI.PT | TRADE VENDOR | | | | $3,768,119.99 |
| 14 | MICHIGAN DHHS | 400 S. PINE ST<br>LANSING, MI 48933 | MICHAEL MELVIN<br>PH: 517-242-8784<br>MELVINM3@MICHIGAN.GOV | MEDICAID REBATE ACCRUALS | | | | $3,582,002.00 |
| 15 | KENTUCKY STATE TREASURER | 11013 WEST BROAD STREET, SUITE 500<br>GLEN ALLEN, VA 23060 | TAMMY A. SLINKER<br>PH: 804-921-9090<br>TASLINKER@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $3,323,079.00 |
| 16 | STATE OF TENNESSEE - TENNCARE | 310 GREAT CIRCLE ROAD<br>NASHVILLE, TN 37228 | TONI CHAVIS<br>PH: 615-507-6363<br>TONI.CHAVIS@TN.GOV | MEDICAID REBATE ACCRUALS | | | | $2,841,328.00 |
| 17 | MCKESSON CORPORATION | 6555 N. STATE HIGHWAY 161<br>IRVING, TX 75039 | JAYME SMITH<br>PH: (972) 969-9435 | THIRD-PARTY REBATE ACCRUALS | | | | $2,790,140.00 |
| 18 | NC DIVISION OF HEALTH BENEFITS | 11013 WEST BROAD STREET, SUITE 500<br>GLEN ALLEN, VA 23060 | CHENISE STEPHENS<br>PH: 804-548-0336<br>CRSTEPHENS@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $2,774,755.00 |
| 19 | UNITED BIOSOURCE LLC (UBC) | PO BOX 75828<br>BALTIMORE, MD 21275 | JOHN KILEY<br>PH: (816) 421-6400<br>JOHN.KILEY@UBC.COM | TRADE VENDOR | | | | $2,664,073.56 |
| 20 | PATHEON | 5900 MARTIN LUTHER KING JR HWY<br>GREENVILLE, NC 27834 | JUSTIN VALDEZ<br>PH: (252) 214-5760<br>JUSTIN.VALDEZ@THERMOFISHER.COM | TRADE VENDOR | | | | $2,232,478.92 |

| | Name of creditor | Complete mailing address, and employee, agents, or department familiar with claim | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 21 | SUN PHARMACEUTICAL INDUSTRIES | 1061 MOUNTAIN HIGHWAY<br>ABN 47 100 162 481<br>BORONIA VICTORIA 3155<br>AUSTRALIA | VENKATESHAN RANGACHARI<br>PH: +44 (0) 7932177283<br>VENKATESHAN.RANGACHARI@SUNPHARMA.COM | TRADE VENDOR | | | | $2,044,216.47 |
| 22 | TANNER INDUSTRIES INC | PO BOX 536300<br>PITTSBURGH, PA 15253 | THOMAS HEARN<br>PH: (800) 643-6226<br>THEARN@TANNERIND.COM | TRADE VENDOR | | | | $2,022,741.54 |
| 23 | ARKANSAS DMS PHARMACY PROGRAM | 11013 WEST BROAD STREET, SUITE 500<br>GLEN ALLEN, VA 23060 | DAVID PINKSTON<br>PH: 804-548-0382<br>DWPINKSTON@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $1,971,132.00 |
| 24 | TEXAS HEALTH & HUMAN SERVICES COMMISSION | PO BOX 8520, MAIL CODE 2250<br>4900 N. LAMAR<br>AUSTIN, TX 78708 | LINDA BRUMBLE<br>PH: 512-428-1996<br>LINDA.BRUMBLE@HHSC.STATE.TX.US | MEDICAID REBATE ACCRUALS | | | | $1,938,985.00 |
| 25 | HUMANA INC | 500 WEST MAIN ST<br>LOUISVILLE, KY 40202 | LEE GROVES<br>PH: 502-580-9792<br>LGROVES@HUMANA.COM | THIRD-PARTY REBATE ACCRUALS | | | | $1,541,977.00 |
| 26 | LOUISIANA DEPARTMENT OF HEALTH & HOSPITALS | 15 CORNELL ROAD, SUITE 2201<br>LATHAM, NY 12110 | DAVID HASSOUN<br>PH: 518-220-3879<br>HASSOUND@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $1,468,058.00 |
| 27 | WOLSELEY INDUSTRIAL GROUP | PO BOX 644054<br>PITTSBURGH, PA 15264 | ANGELA CHAPA<br>PH: (317) 408-9160<br>ANGELA.CHAPA@FERGUSON.COM | TRADE VENDOR | SUBJECT TO SETOFF | | | $1,444,165.80 |
| 28 | IDAHO HEALTH AND WELFARE | 4300 COX ROAD<br>GLEN ALLEN, VA 23060 | WENDY MOODY<br>PH: 804-935-4975<br>WLMOODY@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $1,371,387.00 |
| 29 | OKLAHOMA HEALTH CARE AUTHORITY | 4345 N. LINCOLN BLVD<br>OKLAHOMA CITY, OK 73105 | BRYON PERDUE<br>PH: 405-522-7031<br>BRYON.PERDUE@OKHCA.ORG | MEDICAID REBATE ACCRUALS | | | | $1,370,461.00 |
| 30 | GREIF BROS | PO BOX 88879<br>CHICAGO, IL 60695 | DARRELL TRACHSEL<br>PH: (636) 233-2290<br>DARRELL.TRACHSEL@GREIF.COM | TRADE VENDOR | | | | $1,359,582.39 |
| 31 | PUERTO RICO MEDICAID PROGRAM | CALLE ALDA 1549 SECTOR EL CINCO<br>SAN JUAN, PR 00919 | CARMEN RODRIGUEZ<br>PH: 787-474-3300<br>CLETICIA@ASESPR.ORG | MEDICAID REBATE ACCRUALS | | | | $1,347,064.00 |
| 32 | CLARUSONE SOURCING SERVICES LLP | 10-12 RUSSELL SQUARE<br>LONDON WC1B 5EH<br>UNITED KINGDOM | GILLIAN MURPHY<br>AR@CLARUSONESOURCING.COM | THIRD-PARTY REBATE ACCRUALS | | | | $1,322,916.00 |
| 33 | INDIANA FAMILY & SOCIAL SERVICE ADMIN. | 150 WEST MARKET STREET SUITE 300<br>INDIANAPOLIS, IN 46204 | MARTHA BLAIR<br>PH: 317-504-8560<br>MARTHA.BLAIR@FSSA.IN.GOV | MEDICAID REBATE ACCRUALS | | | | $1,317,985.00 |
| 34 | OHIO DEPARTMENT OF MEDICAID | 45 COMMERCE DRIVE SUITE 5<br>AUGUSTA, ME 04332 | SHARI MARTIN<br>PH: 207-622-7153<br>SMARTIN@CHANGEHEALTHCARE.COM | MEDICAID REBATE ACCRUALS | | | | $1,303,800.00 |
| 35 | OPTUMRX | 2300 MAIN STREET<br>IRVINE, CA 92614 | ERIC GOLDSTEIN<br>PH: (860) 251-5059<br>EGOLDSTEIN@GOODWIN.COM | THIRD-PARTY REBATE ACCRUALS | | | | $1,235,624.00 |
| 36 | ALABAMA MEDICAID AGENCY | 301 TECHNACENTER DR<br>MONTGOMERY, AL 36117 | HEATHER VEGA<br>PH: 334-353-4592<br>HEATHER.VEGA@MEDICAID.ALABAMA.GOV | MEDICAID REBATE ACCRUALS | | | | $1,232,638.00 |
| 37 | MIKART | 1750 CHATTAHOOCHEE AVE<br>ATLANTA, GA 30318 | LOUIS WEBER<br>PH: (404) 425-7409<br>LWEBER@MIKART.COM | TRADE VENDOR | | | | $1,221,448.80 |
| 38 | MISSISSIPPI DIVISION OF MEDICAID | 385B HIGHLAND COLONY PARKWAY<br>SUITE 300<br>RIDGELAND, MS 39157 | KATHERINE THOMAS<br>PH: 601-206-2900<br>KATHERINE.THOMAS@CONDUENT.COM | MEDICAID REBATE ACCRUALS | | | | $1,203,508.00 |
| 39 | PIRAMAL CRITICAL CARE | 3950 SCHELDEN CIRCLE<br>BETHLEHEM, PA 18017 | SEURGAI KADAN<br>PH: (610) 974-9760 | TRADE VENDOR | | | | $1,189,870.77 |
| 40 | GEORGIA DEPT OF COMMUNITY HEALTH | 11013 WEST BROAD STREET, SUITE 500<br>GLEN ALLEN, VA 23060 | JENNIFER MCCRAY<br>PH: 518-220-3829<br>MCCRAYJ@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $1,170,077.00 |
| 41 | EXPRESS SCRIPTS | 6625 WEST 78TH ST<br>BLOOMINGTON, MN 55439 | DREW PATTERSON<br>PH: 314-684-7683<br>DMPATTERSON@EXPRESS-SCRIPTS.COM | THIRD-PARTY REBATE ACCRUALS | | | | $1,110,880.00 |
| 42 | EXTRACTAS BIOSCIENCE | AUSTRALIA NEW ZEALAND BANKING GRP<br>LTC ACCT 340638<br>MELBOURNE, VICTORIA 2013<br>AUSTRALIA | ROSS MURDOCH<br>PH: (61) 3-6393-5202<br>ROSS.MURDOCH@EXTRACTAS.COM.AU | TRADE VENDOR | | | | $1,096,758.25 |
| 43 | SYNEOS HEALTH CONSULTING | PO BOX 80368<br>RALEIGH, NC 27623 | JOHN OLEFSON<br>PH: (984) 459-4747<br>CONSULTING.AR@INVENTIVHEALTH.COM | TRADE VENDOR | | | | $1,023,304.09 |
| 44 | SOURCE HEALTHCARE ANALYTICS | PO BOX 207578<br>DALLAS, TX 75320 | NATALIA GARCIA<br>PH: (866) 467-4648<br>NATALIA.GARCIA2@ICONPLC.COM | TRADE VENDOR | | | | $1,019,072.72 |
| 45 | PITTSBURG TANK AND TOWER CO | PO BOX 517<br>HENDERSON, KY 42419 | MICHAEL ROBITZSCH<br>PH: (251) 442-0111<br>MCR@PTTG.COM | TRADE VENDOR | | | | $984,668.75 |
| 46 | W.R. GRACE AND CO. | 16335 COLLECTIONS CENTER DR<br>CHICAGO, IL 60693 | BRIAN GRAVES<br>PH: (650) 438 8870<br>BRIAN.GRAVES@GRACE.COM | TRADE VENDOR | | | | $919,212.00 |
| 47 | SENDERRA RX PARTNERS | 9330 LYNDON B JOHNSON FWY<br>DALLAS, TX 75243 | BOB WILBURN<br>PH: (214) 446-9405<br>BOB.WILBURN@SENDERRARX.COM | TRADE VENDOR | | | | $895,593.00 |

| | Name of creditor | Complete mailing address, and employee, agents, or department familiar with claim | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **48** | PA DEPT. OF HUMAN SERVICES | PO BOX 780634<br>PHILADELPHIA, PA 19178 | BRITTANY STARR<br>PH: (717) 346-8164<br>C-BSTARR@PA.GOV | MEDICAID REBATE ACCRUALS | | | | $853,481.00 |
| **49** | CAPGEMINI AMERICA | 012663 COLLECTION CENTER DR<br>CHICAGO, IL 60693 | MICHELE PESANELLO<br>PH: (201) 238-1139<br>MICHELE.PESANELLO@CAPGEMINI.CO<br>M | TRADE VENDOR | | | | $796,167.95 |
| **50** | ARIZONA - AHCCCS | 11013 WEST BROAD STREET, SUITE 500<br>GLEN ALLEN, VA 23060 | JENNIFER MCCRAY<br>PH: 518-220-3829<br>MCCRAYJ@MAGELLANHEALTH.COM | MEDICAID REBATE ACCRUALS | | | | $794,662.00 |

(1) Amount listed reflects the face amount of the relevant contingent payment obligation under the Debtors' 2022 chapter 11 plan and is without prejudice to any party's rights as to the allowable amount of such claim, if any.

Fill in this information to identify the case and this filing:

Debtor Name **Mallinckrodt Pharmaceuticals Limited**

United States Bankruptcy Court for the: **District of Delaware**
(State)

Case number (If known):

# Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ Schedule A/B: Assets-Real and Personal Property *(Official Form 206A/B)*

☐ Schedule D: Creditors Who Have Claims Secured by Property *(Official Form 206D)*

☐ Schedule E/F: Creditors Who Have Unsecured Claims *(Official Form 206E/F)*

☐ Schedule G: Executory Contracts and Unexpired Leases *(Official Form 206G)*

☐ Schedule H: Codebtors *(Official Form 206H)*

☐ Summary of Assets and Liabilities for Non-Individuals *(Official Form 206Sum)*

☐ Amended Schedule ____

☒ Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☒ Other document that requires a declaration **List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **08/28/2023** ***X** /s/ **Jason Goodson***
Signature of individual signing on behalf of debtor

**Jason Goodson**
Printed name

**Authorized Signatory**
Position or relationship to debtor